## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

MALIC SIMPSON,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          No. CIV-24-512-R
                                        )
AMERICAN FIDELITY ASSURANCE,            )
CO.,                                    )
                                        )
                    Defendants.         )

## <u>ORDER</u>

Plaintiff Malic Simpson asserts claims against her former employer, Defendant American Fidelity Assurance Company, for discrimination, failure to accommodate, and retaliation in the violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101, et seq.[1] AFA moves for summary judgment on each claim [Doc. No. 43], contending that the undisputed material facts show that Plaintiff could not perform the essential functions of her job, with or without accommodation, and that no reasonable accommodation existed that would not impose an undue hardship. Plaintiff moves for partial summary judgment [Doc. No. 44] on her assertion that she qualifies as having an actual or record of disability and on AFA's undue hardship defense. Both motions are fully briefed [Doc. Nos. 58, 59, 63, 64] and at issue.

---

[1] Plaintiff also asserted claims under Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, Defendant's motion states that Plaintiff has agreed to withdraw the claims and Plaintiff's briefing does not contend otherwise.

## FACTUAL BACKGROUND[2]

The crux of this dispute is whether AFA fulfilled its obligations under the Americans with Disabilities Act after Plaintiff requested a job accommodation that would allow her to avoid lifting, pushing, pulling, or carrying anything over five pounds for one year.[3] AFA concluded that it could not reasonably accommodate this restriction and terminated Plaintiff's employment in July 2023.

Prior to her termination, Plaintiff was employed by AFA as a Senior Document Management Technician assigned to the Claims Team in the Document Management Division. Plaintiff was one of approximately seven document technicians on the Claims Team. Sherika Luper was the team lead (and Plaintiff's direct supervisor) and Renee Fountain was the supervisor of the Document Management Division. The Claims Team is responsible for sorting, scanning, and digitally indexing incoming claims for benefits and insurance premium checks. Daily tasks include opening the workspace, opening and distributing mail, scanning batches of documents and checks, typing and verifying information from documents, and closing the workspace. Some of these tasks rotate amongst team members and some are performed in teams of two or more. Ms. Luper creates the rotation schedule. There are no written criteria for rotating tasks amongst the Claims Teams – Ms. Luper "just rotate[s] everyone" and tries to be "fair." Luper Depo [Doc. No. 43-1] 103:9-104:1, 176:9-177:7.

---

[2] Unless otherwise indicated, the facts stated in this section include facts stated by Defendant or Plaintiff that are not genuinely disputed.

[3] For ease of reference, the Court refers to this as the "lifting restriction."

2

AFA describes the Senior Document Management Technician position as a "physically active and manual-labor-type job" where nearly every activity requires the employee to handle batches of paper weighing more than five pounds. *See* Def.'s Mot. ¶¶ 6-7. AFA further contends that the team works together in a sequential workflow that depends on employees completing their assigned task before the next task can begin. *Id.* at ¶ 8. AFA's job description states that lifting and carrying objects weighing 30 pounds or less occurs "frequently," meaning 21-50% of the time. *Id.* at Ex. 6.

Plaintiff disputes this characterization of the job and contends that most of the workday involves sitting at a desk and performing computer work, such as typing, verifying information, and sending emails.[4] Pl.'s Response Br. ¶ 6. Plaintiff further contends that only some of the tasks must be performed sequentially, certain tasks (such as scanning checks or typing/verifying information) do not involve lifting more than five pounds, and other tasks (such as opening the workspace or mail duties) are assigned to multiple team members such that Plaintiff could have performed those portions of the task that did not involve lifting more than five pounds. *Id.* ¶¶ 8, 10, 24; Luper Depo at 60:5-8; 83:16-91:13; 133:20-134:7. Plaintiff additionally notes that some job tasks were not rotated amongst

---

[4] Plaintiff submitted an affidavit in support of some of the facts asserted in her response to AFA's motion for summary judgment. AFA objects to the affidavit as conclusory and self-serving. *See Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) ("[T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."). Federal of Civil Procedure 56(c) permits a party to rely on an affidavit to support or oppose a motion for summary judgment. Plaintiff's affidavit sets forth specific facts within her personal knowledge, including some that are consistent with her cited deposition testimony. Accordingly, exclusion of the affidavit is not warranted.

team members for a year or two because certain employees enjoyed doing those particular tasks. *Id.* at 218:25-221:18. Further, although AFA contends that dividing heavy batches of documents into smaller stacks slows the workflow, there is no written policy against it and sometimes large stacks have to be divided to fit through the scanner. *Id.* at 72:17-73:3, 101:25-102:12; 159:8-13.

Although the parties take different views of the job duties, they agree that Plaintiff requested a job accommodation in mid-2023. Plaintiff has a back and neck impairment that has required regular treatment, including surgeries in 2021 and 2022. In 2021, Plaintiff made a request in 2021 to not lift, push, or pull anything over ten pounds, which AFA informally accommodated. When Plaintiff requested the ten-pound lifting restriction, Ms. Fountain responded that "[t]his should not be a problem," "[d]on't let your paper piles get too heavy," and "[t]hese all sound easy to accommodate." Pl.'s Response Br., Ex. 18. Plaintiff was on medical leave following the second surgery from mid-December 2022 to mid-March 2023. Pl.'s Mot. ¶¶ 19-24.

When Plaintiff returned to work in mid-March 2023, she had no work restrictions. In May, she sent a message to Ms. Luper requesting that she not be assigned the task of closing the workspace and offering to provide a medical note. Def.'s Mot., Ex. 14. Ms. Luper indicated that a note outlining the work restrictions was needed. *Id.* Also in May, Ms. Fountain emailed AFA's human resources department that Plaintiff asked her doctor for restrictions on two work tasks and that "[u]p until now this has not created a hardship; however, if she continues to request restrictions for tasks she doesn't like to do, it will create hardship" for the Claims Team. Def.'s Mot., Ex. 15.

On June 29, 2023, in response to an email from Ms. Luper about the recycling task not being completed, Plaintiff stated that she did not feel strong enough for manual labor and would provide a doctor's note. *Id.* at Ex. 16. That same day, she sent an email to a human resources employee formally requesting an accommodation. She also provided a form, completed by her physician, suggesting accommodations of intermittent leave from work, unable to lift/push/pull/carry over five pounds, and limited driving, for a period of one year. *Id.* at Ex. 17, 18. AFA's HR team notified Ms. Luper and Ms. Fountain of the lifting restriction and asked if they could accommodate it for the next two weeks. *Id.* Ms. Fountain promptly responded that the restriction causes a hardship and Plaintiff will not be able to perform 70% of her job. *Id.*

The next morning, Ms. Fountain sent the HR team a document highlighting areas of the job that Plaintiff could not perform. Pl.'s Mot., Ex. 16. The HR team then had a meeting with Plaintiff and although the tenor of the meeting is disputed, by the end of it, Plaintiff had been placed on administrative leave while AFA considered her accommodation request. Def.'s Mot., Ex. 19. The day after the meeting, Plaintiff sent two emails to HR stating that she is confident in her tasks other than the recycling and closing duties, the tasks are not being properly rotated, and requesting a temporary job restructure. *Id.* at Exs. 20-22. Ms. Luper provided comments and responses to issues raised in the email that were forwarded to Ms. Fountain and HR, but not to Plaintiff. *Id.* Separately, Ms. Fountain told Ms. Luper that Plaintiff's email was "self-serving, nothing to do with the contributing to the dept." and Ms. Luper agreed. Pl.'s Response Br., Ex. 19.

Over the next several days, the HR team worked with Ms. Luper and Ms. Fountain to create and revise a "work illustration" and "duty and time illustration" outlining the functions of the job and the impact of the lifting restriction. Ms. Luper testified that she created the documents to explain to HR why Plaintiff could not perform her duties with the restriction. Luper Depo at 189:25-194:4. Ms. Fountain and the HR team relied on Ms. Luper to provide information about the job duties and whether the restriction created a hardship. Fountain Depo [Doc. No. 59-7] at 85:21-86:8, 90:20-97:7; Breechan Depo [Doc. No. 59-14] at 191:3-10, 194:4-14. Strangely, Ms. Fountain testified that she has no recollection of sending the email to the HR team highlighting the job functions Plaintiff could not perform and stated she has no personal knowledge of the job functions. Fountain Depo, 40:2-41:11, 44:9-11, 45:6-16, 58:4-24. There is also evidence that Ms. Fountain and Ms. Luper understood Plaintiff to be unable to perform some duties that do not involve lifting more than five pounds, like check scanning, due to a preexisting restriction or other concerns, but Plaintiff disputes that she ever requested an accommodation or was unable to perform this task. Def.'s Mot., Ex. 9, 10, 17; Luper Depo 140:23-142:2; Pl.'s Response Br., Ex. 3.

On July 10, 2023, the HR team scheduled a meeting with Plaintiff, ostensibly for the purpose of providing an "update" on her leave status and a "review" of her restrictions. Pl.'s Mot., Ex. 21. That same day, a member of the HR team, using the information provided by Ms. Luper, drafted a "hardship template/response" which stated that the lifting restriction eliminated 90% of the job duties and that it is not feasible to recreate a role focused only on electronic work given the workflow. Pl.'s Mot., Ex. 22. AFA met with

Plaintiff on July 12, 2023 and terminated her employment. An HR employee testified that the purpose of the meeting was to terminate Plaintiff's employment, and the termination decision had already been made. Breechan Depo at 128:12-24.

At some point after determining that Plaintiff's restriction prevented her from performing essential job functions but before terminating her employment, an HR employee conducted a review of vacant positions at AFA that Plaintiff could potentially fill. However, because all positions require an employee to transport a laptop and case to/from the office, she concluded that any vacant position would also violate Plaintiff's lifting restriction. *Id.* at 49:14-64:11. Defendant's corporate representative testified that, apart from the laptop issue, Plaintiff met the requirements for several vacant positions. *See* Pl.'s Resp. Br. ¶ 24. However, in its reply brief, Defendant contends that the positions identified were either with a company that is related but separate from AFA, had a higher grade, opened two months after Plaintiff's termination, had already been filled, or were never filled.

Plaintiff asserts claims under the ADA and the Oklahoma Anti-Discrimination Act[5] for failure to accommodate, discriminatory termination, and retaliatory termination. Defendant moves for summary judgment on each claim. Plaintiff moves for partial

---

[5] That parties have not separately briefed the claims under the OADA because the OADA's protections are co-extensive with the protections provided by the ADA. *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246 (N.D. Okla.), aff'd, 406 F. App'x 260 (10th Cir. 2010). Accordingly, the Court's conclusions regarding the ADA claims also apply to the OADA claims.

summary judgment on her assertion that she has a disability or record of disability within the meaning of the ADA and on Defendant's undue hardship affirmative defense.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)).

Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

### A. Failure to Accommodate Claim

Plaintiff asserts that Defendant violated the ADA by failing to accommodate her disability. Failure to accommodate claims are assessed using "a modified burden-shifting framework" that requires the plaintiff to make an initial showing that (1) she is disabled; (2) she is otherwise qualified; (3) she requested a plausibly reasonable accommodation; (4) and the employer refused to provide accommodations. *Punt v. Kelly Servs.,* 862 F.3d 1040, 1050 (10th Cir. 2017); *see also Aubrey v. Koppes,* 975 F.3d 995, 1005 (10th Cir. 2020). Establishing these prima facie elements "is not onerous." *Aubrey*, 975 F.3d at 1005. If this showing is made, "the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.,* 180 F.3d 1154, 1179 (10th Cir. 1999). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his or her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.*

Here, the first and last elements of the prima facie case are not genuinely in dispute. Plaintiff contends that she has an actual and/or record of disability within the meaning of the ADA and Defendant does not oppose this aspect of Plaintiff's motion. *See* Def.'s

Response Br. at 13. And no one disputes that Plaintiff was terminated from her job after AFA determined it could not reasonably accommodate her disability.

At issue then is the second and third elements, the analysis of which overlaps somewhat. To satisfy these elements, Plaintiff bears the initial burden of showing she was otherwise qualified and that she requested a plausibly reasonable accommodation. The ADA defines a qualified individual as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C § 12111(8). A reasonable accommodation "refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Aubrey*, 975 F.3d at 1007.

### 1. Essential Function

AFA first contends that Plaintiff is not otherwise qualified because the ability to lift, push, pull, or carry five pounds or more is an essential function of the position. Essential functions are "fundamental job duties" and not those that are "marginal functions of the position." *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1192 (10th Cir. 2023) (quoting 29 C.F.R. § 1630.2(n)(1)). Determining whether a particular function is essential is primarily a "factual inquiry." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003); *see also Hampton*, 87 F. 4th at 1205 (Bacharach, J., concurring). Factors bearing on this inquiry include the employer's judgment, written job descriptions, the time spent performing the function, the consequences if the individual cannot perform the function, the work experience of those in the position in the past, and the current work experience of those in similar positions. 29 C.F.R. § 1630.2(n)(3). The employer's judgment as to what

10

functions of a job are essential is a particularly important consideration. *Hampton*, 87 F. 4th at 1192. Thus, courts "will usually defer to the employer's judgment absent evidence suggesting the purportedly essential function has a tangential relationship with the actual job, is inconsistently enforced, or otherwise lacks a nexus with business needs." *Id.*

In support of its position that lifting more than five pounds is an essential function, AFA relies on the job description for a Senior Document Management Technician, which indicates that employees lift and carry objects of thirty pounds or less frequently, and Ms. Luper's description of the actual demands of the job, which involves picking up or moving heavy stacks of documents for nearly every task. AFA's judgment regarding the job's essential functions weighs heavily but is not conclusive. *Hampton*, 87 F. 4th at 1193.

Plaintiff disputes that the ability to lift, push, pull, or carry over five pounds is an essential function. She argues that the actual essential functions of the position are processing and verifying information from incoming claims. To the extent these tasks involve handling stacks of documents, Plaintiff contends the ability to move heavy stacks is not essential because there are other means of moving the documents, such as by handling multiple smaller stacks rather than one heavy stack. In support of her argument, she points to Ms. Luper's testimony that large stacks are sometimes divided so they can fit through the scanner and that in the past, employees have been rotated off certain tasks for a year or more. She also notes that AFA previously accommodated a ten-pound lifting restriction by suggesting that Plaintiff not let her paper piles get too heavy. This prior accommodation, and Ms. Fountain's belief that accommodating the lifting restriction would be easy and not a problem, permits an inference that AFA has not consistently

enforced its view that lifting or moving heavy stacks is essential. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 990 (10th Cir. 2021) (finding that whether the employee was a "qualified individual" within the meaning of the ADA was a "close question" where there was evidence that the employer agreed to give the employee accommodations after reinstating her). Additionally, Plaintiff testified that many, if not most, of the job tasks do not involve moving items over five pounds. Pl.'s Depo at 218:8-254:25.

Viewing the evidence in Plaintiff's favor, there is room for reasonable disagreement regarding the essential functions of the job. A reasonable factfinder could conclude that even if moving and organizing documents is essential to the position, the ability to lift, push, pull, or carry objects over five pounds is not. *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 915 (10th Cir. 2004) (finding that jury could reasonably conclude that walking was not an essential function for a foreman in a large factory).

### 2. Reasonable Accommodation

AFA next contends that, even if there is a dispute over the essential functions of the position, summary judgment is nevertheless warranted because there was no reasonable accommodation that would allow Plaintiff to perform her job. Plaintiff counters that there is a genuine factual dispute as to whether a reasonable accommodation exists and relies, in part, on AFA's failure to engage in the interactive process.

The interactive process is "inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee" and is "typically an essential component of the process by which a reasonable accommodation can be determined." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999).

The obligation is triggered by "the employee providing notice to the employer of his disability and any resulting limitations." *Dansie v. Union Pac. R.R. Co*., 42 F.4th 1184, 1193 (10th Cir. 2022). Once triggered, the employer has a duty to "engage in good faith with [Plaintiff] in an interactive process to determine her limitations and consider whether the accommodations she requested, or perhaps others that might come to light during this interactive process, would enable [Plaintiff] to return to work." *Aubrey*, 975 F.3d at 1010. The good faith participation of both the employer and employee "is imperative because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job." *Id.* at 1007. "There may not always be a workable accommodation, but the ADA mandates that the employer work with the employee to try to find one." *Id*.

Despite this, "an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process." *Lincoln v. BNSF Ry. Co*., 900 F.3d 1166, 1207 n.29 (10th Cir. 2018). Even if an employer fails to fulfill its interactive process obligations, an employee is not entitled to recovery unless she "can also show that a reasonable accommodation was possible." *Smith*, 180 F.3d at 1174. Still, "an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment." *Aubrey*, 975 F.3d at 1010 (quotation marks omitted). "That is because, when the employer fails to engage in the interactive process, it is not likely that an employer will be able to establish on summary judgment the absence

of a disputed fact as to the existence of a reasonable accommodation." *Id*. (quotation marks omitted).

Here, there is evidence from which a reasonable juror could conclude that AFA did not fulfill its obligations in the interactive process. Plaintiff points out that upon receiving Plaintiff's request for accommodations, Ms. Fountain and Ms. Luper were quick to conclude that a five-pound lifting restriction was a hardship and that Plaintiff may be seeking to avoid doing tasks she does not like to perform. Ms. Fountain, Ms. Luper, and the HR team then went through a process of evaluating the job duties and restrictions without seeking input from Plaintiff. Ms. Luper testified that she created documents during this process to explain why Plaintiff could not perform her job duties. This testimony, when construed in Plaintiff's favor, could be seen as suggesting that AFA was more interested in justifying its position rather than working with Plaintiff to understand her precise limitations and exploring whether any accommodation was available. Further, there is evidence suggesting that AFA's understanding of Plaintiff's limitations was not totally accurate as Ms. Luper's documentation and testimony indicates that Plaintiff could not perform tasks such as scanning and indexing due to pre-existing issues, but Plaintiff disputes this. And although AFA steadfastly contends that Plaintiff was involved in the process because she was given the opportunity to ask questions at the July termination meeting, testimony from AFA's HR employee indicates that the decision to terminate Plaintiff's employment had already been made and the purpose of the meeting was to terminate her employment, not engage in an interactive conversation.

"The ADA contemplates an affirmative obligation to undertake a good faith back-and-forth process between the employer and the employee, with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations." *Aubrey*, 975 F.3d at 1009. There is sufficient evidence that, when viewed in Plaintiff's favor, raises a genuine factual dispute as to whether AFA engaged in a good faith back and forth process with Plaintiff about her limitations and possible accommodations.

Nevertheless, to survive summary judgment, Plaintiff must still identify "a reasonable accommodation that would have enabled her to perform the essential functions of her job, or another job to which the [employer] could have re-assigned her." *Id*. at 1009-1010. A reasonable accommodation "refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Id*. at 1007. "The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position." *Punt*, 862 F.3d at 1050 (internal quotation marks omitted). However, "an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004). Further, an employer is not required by the ADA to reallocate or reassign job duties that are an essential function of the job. *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995).

In her email communications to AFA, Plaintiff indicated that she felt confident with her tasks other than recycling and closing the office and requested more frequent task

rotation and job restructuring. In her briefing, she also suggests that reasonable accommodations could include permitting her to divide heavy batches of documents into smaller batches, assigning her to the discrete actions within certain tasks that do not require heavy lifting, or reassignment to a vacant position.

For purposes of making out a prima facie case, the burden to identify a plausibly reasonable accommodation is "not a heavy one; [the plaintiff is] required only to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Hampton*, 87 F.4th at 1196 (quotation marks omitted). Here, there is evidence that the Claims Team had previously accommodated lifting restrictions and rotated employees off certain tasks for lengthy periods. Plaintiff's suggested accommodations are in line with these actions and she has therefore satisfied her initial burden to identify a plausibly reasonable accommodation. The burden therefore shifts to AFA to present evidence conclusively showing an inability to provide a reasonable accommodation. *Aubrey*, 975 F.3d at 1005. AFA contends that it can meet this burden as to each proposed accommodation.

With respect to the proposed accommodation of reassignment to a vacant position, AFA makes two arguments in response. First, AFA argues that its HR team considered reassignment but concluded that it could not accommodate her restrictions because every position at AFA in Oklahoma requires the employee to carry a laptop and case which weighs at least five pounds.[6] In the Court's view, this argument strains credulity and is

---

[6] A photograph of the laptop and case sitting on a scale was included as an exhibit to AFA's reply brief. The scale shows that the items weigh 5.55 pounds. Def.'s Reply Br., Ex. 2.

further evidence that AFA did not engage in the interactive process in good faith. Surely, there is a reasonable accommodation that could have been put in place (or at least considered in the course of a good faith interactive process) to deal with the laptop requirement, such as providing a second laptop that could be kept at home, acquiring a lighter weight laptop, or permitting Plaintiff to transport the laptop and case in two separate trips. *See Smith*, 180 F.3d at 1161 ("[A] 'qualified individual with a disability' includes a disabled employee who desires and can perform with or without reasonable accommodation an available reassignment job within the company[.]").

AFA's second argument on this topic fairs better. It contends that none of the positions identified by Plaintiff were actually vacant, either because they were with a separate company, they opened well after Plaintiff was terminated, they were at a higher grade, they were filled prior to Plaintiff's accommodation request, or they were never filled. "[T]he ADA does not require the employer to reassign a disabled employee to a position that would constitute a promotion" or to reassign to a position that is not actually vacant. *Duvall v. Georgia-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010). AFA has put forth unrebutted evidence showing that the vacant positions identified by Plaintiff were not at her grade or were not available during the period of her accommodation request, and reassignment to these positions is therefore not a reasonable accommodation.

With respect to the suggested accommodation of breaking up heavy stacks into smaller stacks, AFA argues this is not reasonable because it would require extra steps, increase the potential for misplacement, and slow down the sequential workflow. Certainly,

there are jobs where providing an accommodation that alters the workflow is not reasonable. *See Milton*, 53 F.3d at 1125 (holding that "reducing defendant's production standards or allowing plaintiffs to move only the lighter loads is more accommodation than is reasonable for this defendant"). But there is evidence in the record that casts doubt on AFA's assertion that dividing documents into smaller stacks is unreasonable. As previously noted, in 2021, Ms. Fountain concluded that a ten-pound lifting restriction should not be a problem and she instructed Plaintiff to not let her paper piles get too heavy. AFA does not explain why reducing the size of the paper piles was reasonable in 2021 but is unreasonable now. *See Dansie*, 42 F.4th at 1197 (finding a genuine factual dispute about whether an accommodation was reasonable based, in part, on the plaintiff providing "evidence that Defendant accommodated him on a similar arrangement" previously).

AFA also argues that assigning Plaintiff to tasks that do not violate her lifting restriction is unreasonable because it shifts the physical work to her colleagues. To be sure, an employer is not required to reallocate essential functions or provide "[a]n accommodation that would result in other employees having to worker harder or longer." *Milton*, 53 F.3d at 1125. However, an employer "may restructure a job by reallocating or redistributing nonessential, marginal job functions." 29 C.F.R. § Pt. 1630, App. § 1630.2(o). Here, Plaintiff proposes that she be allowed to complete all tasks that do not violate her lifting restriction, complete tasks that require moving heavy stacks by dividing them into smaller stacks, and complete tasks that are performed in a team (such as opening and mail duties) by allocating the more physical tasks (like pushing the mail cart or taking mail out of cabinets) to the other team member while she performs the less physical tasks

(like sorting the mail or turning on the office machines). There is evidence that AFA has reallocated the various tasks amongst its employees based on their personal preferences for lengthy periods of time, apparently without issue. If a jury accepts Plaintiff's understanding of the essential functions of the job, it could also conclude that pushing the mail cart or emptying the recycling bin is a marginal function that can be reasonably reallocated to another employee. *See Lincoln*, 900 F.3d at 1196 (concluding that "[a]n accommodation entailing reassignment of up to 10% of an employee's tasks may be reasonable absent some showing by [the employer] that it could not accommodate [the plaintiff]").

AFA takes the position that Plaintiff's lifting restriction eliminates 90% of her job tasks and that it is not obligated under the ADA to transform her multi-faceted position into one in which she performs only computer work. Plaintiff counters that she is able to perform many if not most of the tasks assigned to a Senior Document Management Technician, handling heavy stacks (as opposed to single checks or smaller stacks) does not absorb as much of the day-to-day work as AFA contends, and the few discrete tasks she cannot perform are nonessential tasks that can easily be reallocated. Ultimately, there is conflicting evidence about the essential functions of the job, AFA's engagement in the interactive process, and the reasonableness of the proposed accommodations. Given the conflicting evidence, and the inferences that must be drawn in Plaintiff's favor, these issues cannot be resolved at the summary judgment stage.

### 3. Undue Hardship

AFA additionally argues that summary judgment is appropriate because accommodating Plaintiff's lifting restriction for an entire year would present an undue

hardship. Plaintiff also moves for summary judgment on this issue, contending that AFA has not identified sufficient evidence to support this affirmative defense.

Undue hardship is defined as "an action requiring significant difficulty or expense" when considered in light of various factors, including

> (i) the nature and cost of the accommodation needed under this chapter;
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C § 12111. The undue hardship inquiry is "highly fact-intensive." *Hampton*, 87 F.4th at 1183 n.17.

To meet its burden on this affirmative defense, AFA relies on much of the same evidence that it uses to contest Plaintiff's prima facie case, namely that the accommodations would have significantly hindered the workflow and increased the work of other employees. Plaintiff argues that AFA did not consider the factors outlined above and is relying on nothing more than speculation when it asserts that accommodating Plaintiff would cause slowdowns or burden coworkers.

AFA has put forward evidence describing the negative impact the proposed accommodation would have on its operations and Plaintiff has put forward evidence

showing that AFA previously made similar accommodations and reallocations for extended periods of time. The evidence is conflicting and minimally sufficient for this issue to survive summary judgment.

### B. Disparate Treatment Claim

Plaintiff asserts that Defendant violated the ADA by discriminating against her because of her disability, and specifically by terminating her employment. To succeed on this claim, Plaintiff must prove that AFA acted with a discriminatory animus against her because she had a disability. *Aubrey*, 975 F.3d at 1014. Because Plaintiff does not offer direct evidence of discriminatory intent, the analysis proceeds through the *McDonnell-Douglas* burden-shifting framework. *Id.* The first step of this framework requires the plaintiff to establish a prima facie case of discrimination by showing (1) that she is disabled within the meaning of the ADA; (2) she is qualified for the job held or desired; and (3) she was discriminated against because of her disability. *Lincoln,* 900 F.3d at 1192. "If the plaintiff advances a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the employment action. *Id.* at 1193 (quotation omitted). "If the employer articulates a satisfactory reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination." *Id.* Pretext is typically shown "by revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* (quotation omitted). Importantly, in assessing pretext, courts must "examine[] the facts as they appeared to the decisionmakers" and should not "second-guess [the employer's]

business judgment—it matters not if [the employer's] reasoning was correct, just whether it honestly believed in the reason for the termination." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 991 (10th Cir. 2021).

"[E]stablishing a prima facie claim is not onerous." *Aubrey*, 975 F.3d at 1014. As previously discussed, AFA does not dispute that Plaintiff is disabled and Plaintiff has presented sufficient evidence to show that she was otherwise qualified for the position. "As for the third element, the ADA defines 'discrimination' to include 'not making reasonable accommodations to the known physical...limitations of an otherwise qualified individual.'" *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A). Plaintiff "satisfied that element as well." *Id.*

AFA maintains that it has a legitimate, nondiscriminatory reasons for terminating Plaintiff's employment, specifically that she was unable to perform the essential functions of her position and accommodating her would have been an undue hardship. The evidence shows that AFA consistently maintained this position from the time it received Plaintiff's request for an accommodation. To show that this reason is pretextual, Plaintiff points to the following evidence: Ms. Fountain's email where she describes Plaintiff as seeking an accommodation because she does not like to perform certain job duties, the exchange between Ms. Luper and Ms. Fountain where they criticize Plaintiff's request as self-serving, and Ms. Luper's purported exaggeration of the impact of Plaintiff's restrictions and proposed accommodations.

Although this presents a close question, there is sufficient evidence to create a genuine factual dispute as to pretext. In particular, there is evidence that Ms. Luper's understanding of Plaintiff's limitations was inaccurate (for example, her belief that Plaintiff

could not scan, which Plaintiff disputes). *See id.* (finding a "triable question as to pretext" where plaintiff presented evidence that employer inaccurately described the plaintiff's limitations). Ms. Luper's understanding of the job duties and restrictions is significant because the other AFA employees testified that they relied primarily on Ms. Luper in reaching their conclusions. There is also evidence that AFA accommodated Plaintiff's previous lifting restriction, which could be seen as contradicting their assertion that Plaintiff's new lifting restriction was a hardship. Additionally, a reasonable juror could view AFA's initial justification for not reassigning her to a different position within the company – that she could not transport a laptop to and from the office – as weak. This evidence, coupled with Ms. Fountain's critical statements of Plaintiff's accommodations request, raises a genuine dispute about whether AFA honestly believed in its proffered reason for the termination.

## C. Retaliation Claim

Plaintiff's final claim is that Defendant violated the ADA by retaliating against her for requesting disability accommodations. Like the discrimination claim, this claim requires evidence of discriminatory intent and the *McDonnell-Douglas* framework is therefore applicable. *Edmonds-Radford*, 17 F.4th at 994. Under this framework, Plaintiff must first show that "(1) she was engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." *Id.* If the plaintiff can establish these prima facie elements, "the burden shifts to [the defendant] to establish a legitimate, nondiscriminatory reason for the

adverse action" and then back to the plaintiff to show that the defendant's "purported reason was pretextual." *Id.*

AFA contends that it terminated Plaintiff because no reasonable accommodation was available and there is no evidence to suggest this was pretextual. For the same reasons described above, Plaintiff has introduced minimally sufficient evidence to create a triable issue of fact as to whether AFA's motivation for terminating Plaintiff's employment was premised on her request for disability accommodations, as opposed to its good faith belief that it could not reasonable accommodate her disability.

## CONCLUSION

As outlined above, there are genuine disputes of material fact that preclude summary judgment on the bulk of the issues identified by the parties. Defendant's Motion for Summary Judgment [Doc. No. 43] is therefore DENIED. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 44] is GRANTED in part with respect to Plaintiff's claim that she has an actual or record of disability within the meaning of the ADA and DENIED with respect to the remaining arguments.

IT IS SO ORDERED this 8th day of May, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE